**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| THE PHELAN GROUP, LLC, | |
| *Plaintiff*, | CIVIL ACTION NO. 2:23-cv-607-JRG |
| v. | (LEAD CASE) |
| MERCEDES-BENZ GROUP AG, | |
| *Defendant.* | |
| THE PHELAN GROUP, LLC, | |
| *Plaintiff*, | CIVIL ACTION NO. 2:23-cv-606-JRG |
| v. | (MEMBER CASE) |
| HONDA MOTOR CO., LTD., | |
| *Defendant.* | |
| THE PHELAN GROUP, LLC, | |
| *Plaintiff*, | CIVIL ACTION NO. 2:23-cv-611-JRG |
| v. | (MEMBER CASE) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| *Defendant.* | |

## SECOND AMENDED COMPLAINT

Plaintiff The Phelan Group, LLC ("Plaintiff" or "The Phelan Group"), by and through its attorneys, for its Second Amended Complaint against Mercedes-Benz Group AG ("Mercedes-Benz" or "Defendant"), and demanding trial by jury, hereby alleges as follows:

## I.  NATURE OF THE ACTION

1.     This is a civil action for patent infringement, arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*

2.     Defendant designs, manufactures, provides, uses, sells, offers for sale, imports, and/or distributes vehicles and components thereof in the State of Texas and this District that infringe the Patents-in-Suit (as defined below), induces others to commit acts of patent infringement in the State of Texas and this District, and/or contributes to infringement by others in the State of Texas and this District.

3.     The Phelan Group seeks past and future damages and prejudgment and post-judgment interest for Defendant's infringement of the Patents-in-Suit.

## II.  PARTIES

4.     The Phelan Group is a limited liability company organized and existing under the laws of the State of New Mexico.

5.     On information and belief, Defendant Mercedes-Benz Group AG is a German corporation with its principal place of business at Mercedesstraße 120, 70372 Stuttgart, Germany. On information and belief, Mercedes-Benz does business itself, or through its subsidiaries, affiliates, and agents in the State of Texas and in this District.

6.     Defendant has been served with process in accordance with the Hague Convention for Service of Process.

7.     On information and belief, Mercedes-Benz is responsible for, *inter alia*, all operations of Mercedes-Benz, including in the United States, for, among other operations, research and development, importing, making, manufacturing, marketing, distributing, offering for sale, and selling automotive vehicles and components from Mercedes-Benz-managed brands.

8.    On information and belief, Mercedes-Benz maintains dealerships throughout this District, at which Mercedes-Benz has committed acts of infringement and placed the Accused Products and Methods into the stream of commerce, including, at least Mercedes-Benz of Plano.

### III. JURISDICTION AND VENUE

9.    Because this action arises under the Patent Laws of the United States, in particular 35 U.S.C. §271 *et seq*., this Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and 1338(a).

10.    Mercedes-Benz is subject to jurisdiction in the United States, and specifically in this District.

11.    Defendant is subject to jurisdiction in the United States, and specifically in this District, under Fed. R. Civ. P. 4(k)(2). Defendant has contacts with the United States that include, *inter alia*, advertising, offering to sell, selling, and/or importing its vehicles and components thereof throughout the United States, including in this District and the patent infringement claims asserted herein arise directly from Defendant's conduct and continuous and systematic activity in the State of Texas and this District.

12.    On information and belief, Mercedes-Benz, individually and together with intermediaries (including agents, subsidiaries, distributors, retailers, and others), designs, manufactures, makes, distributes, offer for sale, sales, and/or imports vehicles and components thereof throughout the United States, including the State of Texas and this District, under the Mercedes-Benz brand name, as well as other owned and licensed brand names. The patent infringement claims asserted herein arise directly from Mercedes-Benz's conduct and continuous and systematic activity in the State of Texas and this District.

13.    This Court also has personal jurisdiction over Mercedes-Benz because, among other things, (i) on information and belief, Mercedes-Benz employs employees and sells products

and services to customers in the State of Texas and in this District; and (ii) the patent infringement claims arise directly from Mercedes-Benz's conduct and continuous and systematic activity in the State of Texas and this District.

14.    This Court has general and/or specific personal jurisdiction over Mercedes-Benz in that it has, directly and/or through intermediaries (including agents, subsidiaries, distributors, retailers, and others), committed acts within the State of Texas and this District giving rise to this action and/or have established minimum contacts with the State of Texas and this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

15.    On information and belief, Mercedes-Benz, alone and in concert with its subsidiaries purposefully has conducted and continues to conduct business in the State of Texas and in this Judicial District.

16.    On information and belief, Mercedes-Benz is in the business of, among other things, manufacturing, marketing, importing, offering for sale, and selling vehicles throughout the United States, including in the State of Texas and in this Judicial District.

17.    On information and belief, this Judicial District has been and is a destination for the Mercedes-Benz managed brand(s) of vehicles accused of infringing the Patents-in-Suit.

18.    On information and belief, Mercedes-Benz does and intends to do business in Texas and in this Judicial District, directly and/or through intermediaries (including agents, subsidiaries, distributors, retailers, and others), has purposefully and voluntarily placed one or more infringing products and/or services, as described below, into the stream of commerce with expectation that the products will be purchased and used by end customers and/or consumers in the State of Texas and in this Judicial District.

19.    The infringing products and/or services have been and continue to be used, sold, offered for sale, purchased, and/or imported in the State of Texas, including in this Judicial District.

20.    Upon information and belief, Defendant directly and/or through intermediaries (including agents, subsidiaries, distributors, retailers, and others) makes, uses, designs, manufactures, distributes, imports, offers for sale, sells, and/or advertises its vehicles and components and affiliated services thereof in the State of Texas and this District.

21.    Further, on information and belief, Defendant has placed, and continues to place, infringing vehicles and components thereof into the stream of commerce, through an established distribution channel, with the knowledge and/or understanding that such vehicles and components thereof are sold in this United States, including in the State of Texas and specifically in this District, by selling and/or offering to sell the products in the State of Texas and this Judicial District, shipping infringing products into the State of Texas and this Judicial District, and/or shipping infringing products knowing those products would be shipped into the State of Texas and this District.

22.    On information and belief, Defendant transacts substantial business with entities and individuals in the State of Texas and in this District.

23.    Defendant regularly conducts business and/or has committed acts of patent infringement, has induced acts of patent infringement by others, and/or has contributed to patent infringement by others within the State of Texas and this District, and elsewhere in the United States.

24.    On information and belief, Defendant derives, and has derived, substantial revenue from its infringing activity occurring in the State of Texas and within this District and/or should reasonably expect its actions to have consequences in this State of Texas and this District.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is a foreign corporation and not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).  Moreover, a substantial part of the events and omissions giving rise to the claims at issue occurred in this District,

26.    Mercedes-Benz is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and in this District, because, among other things, (a) Mercedes-Benz has done and continues to do business in the State of Texas and in this District, (b) Mercedes-Benz has committed and continues to commit acts of patent infringement in the State of Texas and this District, including making, using, offering to sell, selling, and/or importing accused products into the State of Texas and this District, inducing others to commit acts of patent infringement in the State of Texas and this District, and/or contributing to acts of patent infringement in the State of Texas and this District, and/or (c) Mercedes-Benz has engaged and continues to engage in persistent conduct and/or has derived and continues to derive substantial revenue from goods and services provided to customers, including accused products, in the State of Texas and in this District.

## IV.  BACKGROUND

### PATENTS-IN-SUIT

27.    Over the past ten years, the United States Patent and Trademark Office has awarded at least eight patents to Michael Phelan that have been assigned to The Phelan Group, including the seven Patents-in-Suit, thereby recognizing the many discoveries made by Mr. Phelan relating to systems and methods for authenticating a driver and controlling and/or monitoring the usage of a vehicle.

28.    The Phelan Group is an operating company that has been actively developing and commercializing products under the brand name RideBeside.  The Phelan Group's products are

based on the inventions disclosed in The Phelan Group's patents and, among other things, are aimed toward driver safety and training.  Initial product configurations are in road testing and are configured to help drivers form safer driving habits by providing real-time feedback regarding driving decisions.

29.    The Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,045,101 (the "'101 Patent") (Doc. 1-2), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on June 2, 2015.

30.    The Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,493,149 (the "'149 Patent") (Doc. 1-3), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued November 15, 2016.

31.    The Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 9,908,508 (the "'508 Patent") (Doc. 1-4), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on March 6, 2018.

32.    The Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 10,259,465 (the "'465 Patent") (Doc. 1-5), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on April 16, 2019.

33.    The Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 10,259,470 (the "'470 Patent") (Doc. 1-6), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on April 16, 2019.

34.    The Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 11,352,020 (the "'020 Patent") (Doc. 1-7), entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," issued on June 7, 2022.

35.    The Phelan Group is the owner of all right, title, and interest in and to U.S. Patent No. 11,472,427 (the "'427 Patent") (Doc. 1-8), entitled "Driver authentication system and method for monitoring and controlling vehicle usage," issued on October 18, 2022.

36.    Together, the foregoing patents are referred to herein as the "Patents-in-Suit." The Phelan Group is the assignee of the Patents-in-Suit and has all rights to sue for infringement and collect past and future damages for the infringement thereof.

37.    The Phelan Group has also filed a pending continuation U.S. Patent Application No. 17/146,101, entitled "Driver Authentication System and Method for Monitoring and Controlling Vehicle Usage," which was filed on May 17, 2022.

DEFENDANT'S ACTS

38.    According to its corporate literature, "Mercedes-Benz AG controls the global business of Mercedes-Benz Cars & Mercedes-Benz Vans with approximately 175,000 employees worldwide. Mercedes-Benz AG focuses on the development, production and sale of cars and vans and on the provision of related services."

39.    On information and belief, Defendant (directly and/or through other controlled entities) controls Mercedes-Benz USA, LLC ("Mercedes-Benz USA"), which is a corporation organized and existing under the laws of the State of Delaware.  On information and belief, Defendant conducts at least some of its business in the United States through Mercedes-Benz USA.

40.    On information and belief, Defendant and its subsidiaries and affiliates (including Mercedes-Benz USA) are part of the same corporate structure and distribution chain for the making, importing, offering to sell and selling of the accused products and service described herein in the United States, including in the State of Texas generally and this District in particular.

41.     On information and belief, Defendant does business itself and through its subsidiaries, affiliates, and agents, including Mercedes-Benz USA, in the United States, the State of Texas, and this Judicial District.

42.     On information and belief, Mercedes-Benz USA operates as an agent of Defendant, and/or works in concert with Defendant, to make, use, offer to sell, sell, and/or import infringing products and services in the United States, including in the State of Texas and in this District.

43.     Defendant is liable for all the acts of patent infringement alleged herein.

44.     Defendant makes, uses, sells, offers for sale, distributes, and/or imports vehicles and components of vehicles that have systems and methods for driver authentication and monitoring and controlling vehicle usage as either a standard and/or optional feature, including (but not limited to) Mercedes advanced driver assist systems (including but not limited to Intelligent Drive, Driver Assistance Package & Driver Assistance Package Plus, and/or Drive Pilot, collectively "ADAS Services") and Mercedes Me Connect/Mbrace Services ("Connect Services"). These vehicles include (but are not limited to) the 2019 Mercedes-Benz GLC. The Mercedes-Benz vehicles that come equipped with, for example, Mercedes ADAS Services and Mercedes Connect Services, utilize, without authorization or license, the inventions disclosed in the Patents-in-Suit. The Accused Products and Methods in this case encompass all Mercedes-Benz vehicles with Mercedes ADAS Services and Mercedes Connect Services, as well as all other advanced driver assistance systems and driver authentication systems that operate in a materially similar manner.

45.     By way of illustration only, the 2019 Mercedes-Benz GLC equipped with Mercedes ADAS Services and Mercedes Connect Services meets each and every element of one or more claims of the Patents-in-Suit, including at least claim 1 of each of the Patents-in-Suit.

46.     The 2019 Mercedes-Benz GLC equipped with Mercedes ADAS Services and Mercedes Connect Services includes a suite of systems, features, and/or technology for driver authentication, active safety technologies and ADAS designed to help address accident protection, including, *inter alia*, preventing or mitigating collisions and enhancing safe driving, data recordation including time and speed, alarm generation, specified operational parameters, and operational control of the vehicle including when operational parameters are violated.

47.     On information and belief, Mercedes ADAS Services and Mercedes Connect Services available in other Mercedes-Benz models function in materially the same manner, and so those vehicles also infringe each of the Patents-in-Suit.

48.     Claim 1 of the '149 Patent recites the following:

1. A driver authentication and monitoring system, comprising:

a wireless identification and data logging module;

a master control unit in a motor vehicle for wirelessly authenticating at least one driver via said wireless driver identification and data logging module and associating an operating profile with said at least one driver;

a GPS module providing at least location and speed information in association with movement of said motor vehicle;

a data logging device recording vehicle operation data associated with a use of said motor vehicle by said at least one driver comprising at least said location and speed information from said GPS module; and

a slave control unit in said motor vehicle and in communication with said master control unit, said slave control unit configured to receive commands from said master control unit and to generate an alarm signal if said at least one driver violates said operating profile unique to said at least one driver thereby providing feedback about said vehicle usage;

wherein said master control unit permits said at least one driver to operate said vehicle within said operating profile if said master control unit receives at least one of a unique identification code to permit said at least one driver to operate said vehicle within said operating profile and said at least one driver has not violated said operating profile.

49.     Mercedes-Benz employs Mercedes Connect Services as an authentication and authorization method(s).  Mercedes Connect Services authorizes one or more vehicle users and lets an authorized user(s) control select features of a Mercedes-Benz vehicle, including the 2019 Mercedez-Benz GLC using a key fob or smartphone with the Mercedes Me App.

50.     Mercedes Connect Services, including the Mercedes Me App, provides driver authentication and monitoring and controlling of usage of Mercedes-Benz vehicles, including as shown below.

51.     Mercedes Connect Services technology allows a user to access (e.g., unlock, lock, start) a Mercedes-Benz vehicle through the Mercedes Me App.[1]

52.     With Mercedes Connect Services, authorized users (including a primary driver and/or [an] authorized remote driver(s)) can control select features of a Mercedes-Benz vehicle, including without limitation locking and unlocking doors and starting the vehicle.[2]

53.     Mercedes Connect Services includes, *inter alia*, settings which allow a user to define driving limits for drivers, including at least speed limit, curfew, and area limit and/or distance limit from set location. Mercedes Connect Services provides alerts, which notify the primary driver with push notification alerts if a defined limit for the driver has been violated.[3]

---

1 *See, e.g.*, https://www.mbusa.com/en/mercedes-me-connect;
https://www.mercedesbenzraleigh.com/mercedes-me-connect.
[2]*See, id.*
3 *Id*; *see also* https://www.youtube.com/watch?v=m-PqKA_zpHY.

More details about the Mercedes Me® Connect package ⌄

**Remote Access Services**

**Remote Start** [1], [2] •
Start your vehicle from anywhere, and if climate controls were on, they will automatically heat or cool to your last setting.

**Remote Door Lock & Unlock** •
Lock or unlock your vehicle from virtually any location with the Mercedes me app on your iOS or Android smartphone. You can also do this with a phone call to the mbrace® Response Center (operator assistance requires the mbrace® Secure package).

**Remote Horn & Lights** •
Help locate your car in a crowded lot, or call attention to it in an emergency, by remotely sounding the horn and flashing the exterior lights for a period of five seconds. This feature is accessible through the Mercedes me app.

**Send2Benz** [3] •
Lets you send an address from the Mercedes me app on your phone directly to the COMAND navigation system in your car. When you get to your car, you can start navigating right away, or save the address in the system's memory.

**Vehicle Finder** [1] •
View your car's location on a map on your smartphone, if you've forgotten where you parked or want to monitor your vehicle.

**Roadside Assistance Connection** •
If your Mercedes-Benz needs a jump start, its spare tire installed, or if you have any other vehicle trouble, one button puts you in touch with our legendary Roadside Assistance. Even before your conversation begins, the vehicle transmits its GPS-based location and information about its model and color to the Roadside agent.

**Valet Protect** [1] •
Set up a boundary on your smartphone, and receive a text message alert if your car is turned on, off or exits the "virtual fence."

**Message Center**
Get vehicle-related reminders and notifications from Mercedes-Benz via messages sent to your smartphone.

**Dealer Information** •
Easily contact your preferred dealer, or receive assistance in finding one that's nearby, with the push of a button in your car or via the Mercedes me app. A live assistant can not only look up the dealer for you, but also place the call to connect you to the desired department.

**Curfew Minder** •
Monitor use of your vehicle by receiving alerts when your vehicle has been started during a specified time or date.

**Speed Alert**
Receive text alerts if the vehicle exceeds a speed that you select and set up on the Mercedes me app.

**Driving Journal** •
See where your Mercedes-Benz has been driven using an online map with a "breadcrumb" trail of its recent locations.

**Travel Zones**
Set up virtual boundaries and be alerted if the vehicle travels across them.

**My Mercedes Electric Vehicle Homepage**
View your electric or plug-in hybrid vehicle's charge status, map its driving range, locate charging stations, preheat or cool the cabin, and more, all from your computer or smartphone via the Chrome™ and Safari® Web browsers.

*• Included in Mercedes me app*

54.     In addition, Mercedes ADAS Services provides monitoring and operational control of Mercedes-Benz vehicles, including as shown below.

55.     Mercedes ADAS Services includes various advanced driver assistance systems (ADAS), components, and features, including (but not limited to) Active Distance DISTRONIC and DISTRONIC PLUS with Steering Assist and Stop & Go Pilot, Brake Assist System with Cross-Traffic Assist, Active Lane Keeping Assist, Adaptive Highbeam Assist, Attention Assist, PRESAFE Brake and Break Assist Plus, PRESAFE Plus, Night View Assist Plus, LED Intelligent Light System, and/or Active Lane Keeping and Active Blind Spot Assist.

56.     Active Distance Assist DISTRONIC; DISTRONIC PLUS® with Steering Assist and Stop & Go Pilot; Brake Assist System with Cross-Traffic Assist; Active Lane Keeping Assist; Adaptive Highbeam Assist Plus; Night View Assist® and Assist Plus; ATTENTION ASSIST®; PRESAFE; PRESAFE Brake and Brake Assist Plus; PRESAFE Plus; LED Intelligent Light

System; Active Brake Assist with Cross-Traffic Function; Active Emergency Stop Assist; Active Speed Limit Assist; Active Blind Spot Assist; Active Lane Change Assist.[4]

57.    Active Distance Assist DISTRONIC is designed to keep a selectable set of car lengths between you and the vehicle ahead. DISTRONIC PLUS® with Steering Assist and Stop & Go Pilot is designed to adapt to the flow of traffic and keep the vehicle in its lane.  Evasive steering assist is designed to add torque to help steer quickly and accurately in case of an emergency. Brake Assist System with Cross-Traffic Assist is designed to sense traffic and pedestrians in front of the vehicle and adjust braking pressure if the driver does not apply enough force. Active Lane Keeping Assist is designed to steer the vehicle back to the center of the road if it drifts out of lane. Adaptive Highbeam Assist is designed to vary headlamps to maximize illumination without causing glare for other drivers. Night View Assist® is designed to reduce eye strain and fatigue as the light outside changes to or from night.  Night View Assist Plus is designed to display a real-time view of the dark road ahead, with the ability to point out and shine the headlamps toward pedestrians it detects. ATTENTION ASSIST® is designed to monitor driver's interaction with vehicle controls, detect steering corrects that suggest drowsiness, and trigger an auditory and/or visual warning to tired drivers to help prevent accidents. PRESAFE is designed to anticipate a collision and take certain responsive action.  PRESAFE Brake and Brake Assist Plus is designed to warn the driver if the risk of a collision with another vehicle or a pedestrian is detected and, if there is no driver reaction, independently reduces the vehicle speed. PRESAFE Plus is designed to warn against rear collisions, tighten the seat belt(s) and, if the vehicle is at a

---

[4]    *See,   e.g.*,        https://www.mbusa.com/en/best-or-nothing/safety#accident-investigation; https://www.youtube.com/watch?v=dNz8GPomaio;
https://www.youtube.com/watch?v=D3BIHv2Aj4M;
https://www.youtube.com/watch?v=2ZMlhPN9WLg;
https://www.mercedesbenzofeaston.com/mercedes-benz-intelligent-drive-overview/.

stop, lock the brakes to prevent additional collisions. LED Intelligent Light System is designed to shift the direction and distance of the beam based on steering, speed and surrounding traffic. Active Brake Assist with Cross-Traffic Function is designed to detect potential collisions and adjust your braking pressure as needed. Active Emergency Stop Assist is designed to slow or even stop the vehicle if a collision is imminent. Active Speed Limit Assist is designed to watch for speed signs and adjusts speed levels automatically. Active Blind Spot Assist is designed to prevent the vehicle from changing lanes if a vehicle is in the driver's blind spot. Active Lane Change Assist is designed to move the vehicle to a chosen lane when the turn signal is left active for several seconds.[5]

58.    On information and belief, Mercedes-Benz vehicles equipped with Mercedes ADAS Services and Connect Services, including the 2019 Mercedes-Benz GLC, use, store, record, and secure vehicle data, including (but not limited to) speed and location information.[6]

59.    The wireless identification and data logging module wirelessly identifies the driver by authenticating the driver to the vehicle. The driver is authenticated to the vehicle through the use of their key, smart key, key fob and/or the Mercedes Me and/or Mbrace mobile application on their smartphone mobile device.

---

[5] *See id.*

[6] *See* https://www.mbusa.com/content/dam/mb-nafta/us/legal/Privacy%20Notice%20for%20Mercedes%20me%20connect%20Connected%20Vehicle%20Services_20220316%20(1).pdf.



**Start your engine — anytime, anywhere.**

Mercedes me connect lets you prepare for
any trip using the Remote Engine Start
feature. Plus, you can cool down or heat the
cabin, so as soon as you step inside, you're
completely comfortable and ready to drive.

https://www.mbusa.com/en/mercedes-me-connect#connected-features



**Remotely lock or unlock your vehicle.**

Wondering if you remembered to lock your doors? No
need to worry, you can use the app to lock or unlock
your vehicle with the tap of a button.

https://www.mbusa.com/en/mercedes-me-connect#connected-features



**Digital Vehicle Key**

Using a compatible iPhone or Apple Watch, Digital
Vehicle Key allows you to lock, unlock and even drive
your vehicle. [7]

https://www.mbusa.com/en/mercedes-me-connect#connected-features, Available for the 2024
Mercedes-Maybach EQS and 2024 E-Class

60.    Upon information and belief, once the user has registered, they may then use the mobile app to lock and unlock the vehicle, start and stop the engine, view vehicle status information, determine last parked location and other functionality requiring authentication to the vehicle.

61.    Furthermore, Defendant's Accused Systems and Methods collect and log vehicle operation data associated with a use of the vehicle.  Defendant's Accused Systems and Methods collect, and log vehicle operation data associated with a use of the vehicle.

**The *Mercedes me connect* app**

For 2019 and newer vehicles, you can access the latest vehicle features.

- Use Remote Start or Pre-entry Climate Control (EV Only) and Lock/Unlock
- Send an address to your in-vehicle navigation
- Navigate to chargers (EV Only)
- View vehicle data like mileage/range, fuel level/charge status and more
- Track the location of your vehicle

**Access connected vehicle services for 2019 and newer vehicles using the *Mercedes me connect* app on iOS and Android.**

https://www.mbusa.com/en/owners

When you use a vehicle with Mercedes me connect convenience services and safety and security features, which include automatic collision notification and an emergency call system, we and our service partners collect certain information, including **geolocation information** and **driver behavior information**, as described below. How we use your information will depend on which services you use, how you use those services, and the choices you make in your settings.

*Even if you have not activated Mercedes me connect services, the vehicle may collect and transmit geolocation information and driver behavior information in a collision or potential emergency. See the vehicle's Operator's Manual for more information. Geolocation information may also be accessed without activation of Mercedes me connect services by third-party services providers in accordance with your agreements with them.*

https://www.mbusa.com/content/dam/mb-nafta/us/legal/Privacy%20Notice%20for%20Mercedes%20me%20connect%20Connected%20Vehicle%20Services_20220316.pdf

62.    Examples of data logged include, but are necessarily limited to:

- All speed data, including Speed alerts (e.g., the operating profile might specify that an alert should be sent if and when the car is driven faster than 65mph);
- All location data, including Geofence alerts (e.g., the operating profile might specify that an alert should be sent if and when the car is driven outside of a particular area);
- Stolen Vehicle data (e.g., tracking data);
- Statistical driving data;
- Trip history data;
- Mercedes-Benz Advanced Driving Assistance System data including but not necessarily limited to speed, location, sensor data, alerts and corrective actions (e.g., vehicle "black box" data);
- Data related to the wireless identification and authentication of the driver;
- Ignition On data and alerts;
- Remote access data;
- Vehicle health data;
- Multimedia screen operation log data;
- Driver preference data;
- Vehicle alarm notification data including battery data, tire pressure data, panic button notifications and rear seat occupancy notification data;
- Any other logged data.

**Speed Alert**



https://www.quirk.mercedesdealer.com/mercedes-me-app/

63.    Mercedes-Benz systems notify an authenticated user when someone exceeds a selected speed parameter in the vehicle.



https://www.youtube.com/watch?v=1XwrdHvTnCc at 9:37. *See also* https://www.youtube.com/watch?v=m-PqKA_zpHY&t=3s

64.    Mercedes-Benz systems notify an authenticated when the vehicle enters or leaves a predefined area.

**Geofence Alert**



https://shop.mbusa.com/en-us/connect/pdp/mercedesbenz-connect/710\

65.    With knowledge of the Patents-in-Suit and The Phelan Group's claims of infringement, Mercedes-Benz touts the patented features and instructs its customers to infringe by implementing the systems in an infringing manner.  Exemplary instructions provided by Mercedes-Benz include:

- https://www.mbusa.com/en/owners;

- https://www.mbusa.com/en/mercedes-me-connect#connected-features;

- https://shop.mbusa.com/en-us/connect/pdp/mercedesbenz-connect/710;

- https://shop.mbusa.com/en-us/connect/pdp/traffic-sign-assist/717; and

- https://www.mbusa.com/content/dam/mb-nafta/us/legal/Privacy%20Notice%20for%20Mercedes%20me%20connect%20Connected%20Vehicle%20Services_20220316.pdf.

66.    On information and belief, Mercedes-Benz (and its customers) deploy the Accused Products and Methods on networks in combination with other products. The specific code portions and modules directed to the infringing functionality will be identified from those systems as they are made available for inspection and review by The Phelan Group.

67.    On information of belief, Mercedes-Benz also implements contractual protections in the form of license and use restrictions with its customers to preclude the unauthorized reproduction, distribution, and modification of its software.

68.    Moreover, on information and belief, Mercedes-Benz implements technical precautions to attempt to thwart customers who would circumvent the intended operation of Mercedes-Benz products.

69.     The Phelan Group has not obtained discovery about Mercedes-Benz infringement and the Court has not construed the meaning of any claims or terms in the Patents-in-Suit.  The factual allegations provided in this Complaint are illustrative and without prejudice to The Phelan Group's final infringement contentions.  Further, in providing these allegations, The Phelan Group is not implying any particular claim construction or claim scope.

## V.  COUNTS OF PATENT INFRINGEMENT

### COUNT ONE
### INFRINGEMENT OF U.S. PATENT NO. 9,045,101

70.     The Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

71.     The Phelan Group is the assignee and owner of all right, title, and interest to the '101 Patent. The Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

72.     On information and belief, Mercedes-Benz, without authorization or license, has been and is presently directly infringing one or more claims of the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

73.     Mercedes-Benz has been aware of the '101 Patent, and of its infringement of the '101 Patent, no later than the date the Complaint was received by Mercedes-Benz or its counsel.

74.     On information and belief, at least since the date upon which Mercedes-Benz learned of the '101 Patent, Mercedes-Benz, without authorization or license, has been and is presently indirectly infringing one or more claims of the '101 Patent, including at least claim 1 of the '101 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

75.     On information and belief, Mercedes-Benz has been and is presently actively inducing infringement of the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Mercedes-Benz induces these third parties to directly infringe the '101 Patent because Mercedes-Benz's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '101 Patent.  Mercedes-Benz further induces these third parties to directly infringe the '101 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '101 Patent.

76.     On information and belief, Mercedes-Benz has been and is presently indirectly infringing the '101 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '101 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Mercedes-Benz has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '101 Patent. Mercedes-Benz knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended

purpose, are especially made or especially adapted for use in an infringement of the '101 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

77.    At least since the date upon which Mercedes-Benz learned of the '101 Patent, Mercedes-Benz has willfully infringed the '101 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '101 Patent.

78.    As a result of Mercedes-Benz's infringement of the '101 Patent, The Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT TWO
INFRINGEMENT OF U.S. PATENT NO. 9,493,149

79.    The Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

80.    The Phelan Group is the assignee and owner of all right, title, and interest to the '149 Patent. The Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

81.    On information and belief, Mercedes-Benz, without authorization or license, has been and is presently directly infringing one or more claims of the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

82.    Mercedes-Benz has been aware of the '149 Patent, and of its infringement of the '149 Patent, no later than the date the Complaint was received by Mercedes-Benz or its counsel.

83.    On information and belief, at least since the date upon which Mercedes-Benz learned of the '149 Patent, Mercedes-Benz, without authorization or license, has been and is

presently indirectly infringing one or more claims of the '149 Patent, including at least claim 1 of the '149 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

84.     On information and belief, Mercedes-Benz has been and is presently actively inducing infringement of the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Mercedes-Benz induces these third parties to directly infringe the '149 Patent because Mercedes-Benz's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '149 Patent.  Mercedes-Benz further induces these third parties to directly infringe the '149 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '149 Patent.

85.     On information and belief, Mercedes-Benz has been and is presently indirectly infringing the '149 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '149 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Mercedes-Benz has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '149 Patent. Mercedes-Benz knows that the Accused Products and Methods and/or components thereof (alone

or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '149 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

86.     At least since the date upon which Mercedes-Benz learned of the '149 Patent, Mercedes-Benz has willfully infringed the '149 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '149 Patent.

87.     As a result of Mercedes-Benz's infringement of the '149 Patent, The Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

## COUNT THREE
## INFRINGEMENT OF U.S. PATENT NO. 9,908,508

88.     The Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

89.     The Phelan Group is the assignee and owner of all right, title, and interest to the '508 Patent. The Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

90.     On information and belief, Mercedes-Benz, without authorization or license, has been and is presently directly infringing one or more claims of the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

91.     Mercedes-Benz has been aware of the '508 Patent, and of its infringement of the '508 Patent, no later than the date the Complaint was received by Mercedes-Benz or its counsel.

92.    On information and belief, at least since the date upon which Mercedes-Benz learned of the '508 Patent, Mercedes-Benz, without authorization or license, has been and is presently indirectly infringing one or more claims of the '508 Patent, including at least claim 1 of the '508 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

93.    On information and belief, Mercedes-Benz has been and is presently actively inducing infringement of the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Mercedes-Benz induces these third parties to directly infringe the '508 Patent because Mercedes-Benz's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '508 Patent.  Mercedes-Benz further induces these third parties to directly infringe the '508 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '508 Patent.

94.    On information and belief, Mercedes-Benz has been and is presently indirectly infringing the '508 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '508 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Mercedes-Benz has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused

Products and Methods, which are a material part of the claimed invention of the '508 Patent. Mercedes-Benz knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '508 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

95.    At least since the date upon which Mercedes-Benz learned of the '508 Patent, Mercedes-Benz has willfully infringed the '508 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '508 Patent.

96.    As a result of Mercedes-Benz's infringement of the '508 Patent, The Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT FOUR
INFRINGEMENT OF U.S. PATENT NO. 10,259,465

97.    The Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

98.    The Phelan Group is the assignee and owner of all right, title, and interest to the '465 Patent. The Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

99.    On information and belief, Mercedes-Benz, without authorization or license, has been and is presently directly infringing one or more claims of the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

100.    Mercedes-Benz has been aware of the '465 Patent, and of its infringement of the '465 Patent, no later than the date the Complaint was received by Mercedes-Benz or its counsel.

101.    On information and belief, at least since the date upon which Mercedes-Benz learned of the '465 Patent, Mercedes-Benz, without authorization or license, has been and is presently indirectly infringing one or more claims of the '465 Patent, including at least claim 1 of the '465 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

102.    On information and belief, Mercedes-Benz has been and is presently actively inducing infringement of the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Mercedes-Benz induces these third parties to directly infringe the '465 Patent because Mercedes-Benz's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '465 Patent.  Mercedes-Benz further induces these third parties to directly infringe the '465 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '465 Patent.

103.    On information and belief, Mercedes-Benz has been and is presently indirectly infringing the '465 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '465 Patent by others, such as partners, resellers, distributors,

customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Mercedes-Benz has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '465 Patent. Mercedes-Benz knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '465 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

104.    At least since the date upon which Mercedes-Benz learned of the '465 Patent, Mercedes-Benz has willfully infringed the '465 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '465 Patent.

105.    As a result of Mercedes-Benz's infringement of the '465 Patent, The Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT FIVE
INFRINGEMENT OF U.S. PATENT NO. 10,259,470

106.    The Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

107.    The Phelan Group is the assignee and owner of all right, title, and interest to the '470 Patent. The Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

108.    On information and belief, Mercedes-Benz, without authorization or license, has been and is presently directly infringing one or more claims of the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making,

using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

109.    Mercedes-Benz has been aware of the '470 Patent, and of its infringement of the '470 Patent, no later than the date the Complaint was received by Mercedes-Benz or its counsel.

110.    On information and belief, at least since the date upon which Mercedes-Benz learned of the '470 Patent, Mercedes-Benz, without authorization or license, has been and is presently indirectly infringing one or more claims of the '470 Patent, including at least claim 1 of the '470 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

111.    On information and belief, Mercedes-Benz has been and is presently actively inducing infringement of the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Mercedes-Benz induces these third parties to directly infringe the '470 Patent because Mercedes-Benz's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '470 Patent.  Mercedes-Benz further induces these third parties to directly infringe the '470 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '470 Patent.

112.    On information and belief, Mercedes-Benz has been and is presently indirectly infringing the '470 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '470 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Mercedes-Benz has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '470 Patent. Mercedes-Benz knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '470 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

113.    At least since the date upon which Mercedes-Benz learned of the '470 Patent, Mercedes-Benz has willfully infringed the '470 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '470 Patent.

114.    As a result of Mercedes-Benz's infringement of the '470 Patent, The Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT SIX
INFRINGEMENT OF U.S. PATENT NO. 11,352,020

115.    The Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

116.    The Phelan Group is the assignee and owner of all right, title, and interest to the '020 Patent. The Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

117.    On information and belief, Mercedes-Benz, without authorization or license, has been and is presently directly infringing one or more claims of the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

118.    Mercedes-Benz has been aware of the '020 Patent, and of its infringement of the '020 Patent, no later than the date the Complaint was received by Mercedes-Benz or its counsel.

119.    On information and belief, at least since the date upon which Mercedes-Benz learned of the '020 Patent, Mercedes-Benz, without authorization or license, has been and is presently indirectly infringing one or more claims of the '020 Patent, including at least claim 1 of the '020 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

120.    On information and belief, Mercedes-Benz has been and is presently actively inducing infringement of the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Mercedes-Benz induces these third parties to directly infringe the '020 Patent because Mercedes-Benz's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner that infringes the '020 Patent.  Mercedes-Benz further induces these third parties to directly infringe the '020 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or

operation of the Accused Products and Methods in their normal and customary way to infringe the '020 Patent.

121.    On information and belief, Mercedes-Benz has been and is presently indirectly infringing the '020 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '020 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Mercedes-Benz has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '020 Patent. Mercedes-Benz knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '020 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

122.    At least since the date upon which Mercedes-Benz learned of the '020 Patent, Mercedes-Benz has willfully infringed the '020 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '020 Patent.

123.    As a result of Mercedes-Benz's infringement of the '020 Patent, The Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

COUNT SEVEN<br>INFRINGEMENT OF U.S. PATENT NO. 11,472,427

124.    The Phelan Group incorporates by reference its allegations in all the preceding paragraphs of this Complaint as if fully restated in this paragraph.

125.    The Phelan Group is the assignee and owner of all right, title, and interest to the '427 Patent. The Phelan Group has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

126.    On information and belief, Mercedes-Benz, without authorization or license, has been and is presently directly infringing one or more claims of the '427 Patent, including at least claim 1, under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (including for testing purposes), offering for sale, selling in the United States, or importing into the United States the Accused Products and Methods.

127.    Mercedes-Benz has been aware of the '427 Patent, and of its infringement of the '427 Patent, no later than the date the Complaint was received by Mercedes-Benz or its counsel.

128.    On information and belief, at least since the date upon which Mercedes-Benz learned of the '427 Patent, Mercedes-Benz, without authorization or license, has been and is presently indirectly infringing one or more claims of the '427 Patent, including at least claim 1 of the '427 Patent, under 35 U.S.C. § 271(b), (c), and/or (f).

129.    On information and belief, Mercedes-Benz has been and is presently actively inducing infringement of the '427 Patent, including at least claim 1, under 35 U.S.C. § 271(b). Such inducement includes, without limitation, with specific intent to encourage infringement, knowingly and actively inducing, directing, causing, and encouraging others, including but not limited to, its partners, resellers, distributors, customers, and/or other end users, to make, use, sell, and/or offer to sell in the United States and/or import into the United States the Accused Products and Methods.  Mercedes-Benz induces these third parties to directly infringe the '427 Patent because Mercedes-Benz's affirmative acts of making, selling, and offering to sell its vehicles and services, or components thereof, cause the Accused Products and Methods to be used in a manner

that infringes the '427 Patent. Mercedes-Benz further induces these third parties to directly infringe the '427 Patent by providing guidance, instruction, manuals, advertisements, marketing materials, and technical assistance relating to installation, set up, maintenance, and use and/or operation of the Accused Products and Methods in their normal and customary way to infringe the '427 Patent.

130.    On information and belief, Mercedes-Benz has been and is presently indirectly infringing the '427 Patent, including at least claim 1, under 35 U.S.C. § 271(c) and/or (f), by contributing to infringement of the '427 Patent by others, such as partners, resellers, distributors, customers, and/or other end users, under 35 U.S.C. § 271(c) and/or (f). Mercedes-Benz has made, offered to sell and/or sells in the United States and/or imported into the United States, the Accused Products and Methods, which are a material part of the claimed invention of the '427 Patent. Mercedes-Benz knows that the Accused Products and Methods and/or components thereof (alone or in combination), which when installed in a vehicle according to their natural and intended purpose, are especially made or especially adapted for use in an infringement of the '427 Patent, and are not staple articles or commodities of commerce suitable for substantial noninfringing use.

131.    At least since the date upon which Mercedes-Benz learned of the '427 Patent, Mercedes-Benz has willfully infringed the '427 Patent by deliberately or intentionally engaging in acts of infringement on an ongoing basis with knowledge of the '427 Patent.

132.    As a result of Mercedes-Benz's infringement of the '427 Patent, The Phelan Group has suffered monetary damages, and is entitled to an award of damages adequate to compensate it for such infringement under 35 U.S.C. § 284, but in no event, less than a reasonable royalty.

## VI.    JURY DEMAND

133.    The Phelan Group respectfully demands a trial by jury of all matters to which it is entitled to trial by jury, pursuant to FED. R. CIV. P. 38.

## VII.   PRAYER FOR RELIEF

WHEREFORE, The Phelan Group respectfully requests that this Court enter judgment in its favor and grant the following relief against Defendant:

A.     Judgment that Mercedes-Benz infringed and continues to infringe one or more claims of each of the Patents-in-Suit;

B.     Judgment that Mercedes-Benz's infringement was and is willful;

C.     Award The Phelan Group damages in an amount adequate to compensate The Phelan Group for Mercedes-Benz's infringement of the Patents-in-Suit, and in no event less than a reasonable royalty, together with prejudgment and post-judgment interest, and an ongoing royalty for continued infringement;

D.     Award The Phelan Group treble damages in light of Mercedes-Benz's willful infringement;

E.     Enter an order finding this to be an exceptional case and award The Phelan Group its reasonable attorneys' fees under 35 U.S.C. § 285;

F.     Award The Phelan Group its costs of suit; and

G.     Award The Phelan Group such other relief as the Court deems just and proper under the circumstances.

DATED: July 17, 2024                    Respectfully submitted,

_/s/ Andrew G. DiNovo_
Andrew G. DiNovo
Texas State Bar No. 00790594
adinovo@dinovoprice.com
Adam G. Price
Texas State Bar No. 24027750
aprice@dinovoprice.com
Gregory S. Donahue
Texas State Bar No. 24012539
gdonahue@dinovoprice.com
Michael D. French
Texas State Bar No. 24116392
mfrench@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile: (512) 727-6691

**COUNSEL FOR PLAINTIFF
THE PHELAN GROUP LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document *via* the Court's CM/ECF.

*/s/ Andrew G. DiNovo*
Andrew G. DiNovo